**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**JULIUS KIKER**                                                           **PLAINTIFF**

**v.**                                                          **No. 4:24CV107-RP**

**DIRECTOR KEVIN JACKSON, ET AL.**                              **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Julius Kiker, who challenges the conditions of his confinement under 42 U.S.C. § 1983. That statute provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1] The plaintiff alleges that the defendants have miscalculated how much of his sentence he has served and, as a result, have improperly denied him placement in a more favorable custody classification.

After reviewing the plaintiff's complaint, the court issued an order for him to show cause, within 21 days, why the instant case should not be dismissed with prejudice for failure to state a claim upon which relief could be granted. The plaintiff responded to that order, and the matter is ripe for resolution. For the reasons set forth below, the court finds that the plaintiff has not shown cause, and this case will be dismissed with prejudice.

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

## Discussion[2]

The plaintiff alleges that the defendants have improperly denied his request to be placed in "A custody;" he believes that he has met the requirements for such custody under the Mississippi Department of Corrections (MDOC) Objective Classification System (Points System).

In August 2024, while housed in Unit 30 at the Mississippi State Penitentiary (Parchman), Kiker underwent his annual custody classification review, which resulted in a Classification Score of 1. The plaintiff believes that his score of 1 should result in his placement in "A custody," one of the least restrictive custody classifications within MDOC. The stated reason for the denial was that Kiker had not yet served 15 years on his sentence – a requirement for "A custody."

Kiker objected to that reasoning, as he had originally been sentenced to a term of life on the charge of homicide, but that sentence was vacated on appeal and remanded to the trial court. Doc. 1-5 (Kiker's MDOC Inmate Time Sheet). At that point, Kiker had accumulated credit on his sentence of 2,921 days (just over 8 years) on the murder charge. Upon retrial for that offense, on January 20, 2012, he was again sentenced to life (Docs. 1-3, 1-5). MDOC noted on his Inmate Time Sheet that he had received credit for the 2,921 days he served on the original sentence. Doc. 1-5. By Kiker's calculation, he has presently served over 20 years: (over 8 years on his original sentence) + (over 13 years upon resentencing). Kiker argues that his 20+ years' incarceration is more than sufficient to qualify for placement in A custody.

Kiker sought relief by filing a grievance through the MDOC Administrative Remedy Program (ARP); however, the grievance was ultimately denied. In the First Step Response to the grievance, Director Kevin Jackson noted that Kiker had received the 2,921 days credit towards his *sentence* on

---

[2] The initial discussion of the plaintiff's allegations follows the court's reasoning set forth in its show cause order. The plaintiff's arguments from his response to that order follow – then the court's analysis of those arguments.

his time sheet; however, Kiker pointed out that his Case Manager had not aggregated that time with the time served after his later judgment (for the same conviction) was entered to determine his *custody classification*. Kiker believes that, had his aggregated time served been part of the calculation, he would be eligible for A custody.

## Classification

Kiker's allegations do not state a valid claim for relief under 42 U.S.C. § 1983. Inmates have neither a protectable property or liberty interest to any particular housing assignment or custodial classification, either under the United States Constitution or under Mississippi law. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (citations omitted); Miss. Code Ann. §§ 47-5-99 to -103 (1993). Prisoner classification is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances. *McCord*, 910 F.2d at 1250 (citations omitted). As Kiker has not identified any such extreme circumstances, the instant case will be dismissed with prejudice for failure to state a claim upon which relief could be granted.[3]

---

[3] The plaintiff has not provided sufficient MDOC documentation to show precisely why the defendants denied his request for placement in A-Custody. As discussed above, the court may not consider this issue under 42 U.S.C. § 1983. However, the court notes that many factors can affect classification, including the type of offense committed and institutional behavior. Nonetheless, if the plaintiff's allegations are accurate, and prison authorities simply miscalculated his time served for the purposes of classification, he may present this order to his Case Manager for clarification. It appears from the documentation Kiker included with his complaint that his Case Manager and other staff may have considered only time served after entry of his ultimate criminal judgment – without taking into account the 8 years of time served on his original judgment for the same conviction. The court understands the plaintiff's sense of frustration with this apparent oversight. It is not clear whether he is entitled to such credit; nor is it clear whether, considering all relevant factors, he would qualify for A custody. Regardless, the plaintiff may request a meeting with his Case Manager or other staff involved in determining his custody classification to discuss and, ultimately, resolve the issue.

**The Plaintiff's Response to the Court's Show Cause Order**

The plaintiff's arguments to the contrary are unavailing. He argues first that the alleged miscalculation of his "points" to determine custody classification rises to the level of a due process violation. Doc. 12, p. 3. He also alleges that the miscalculation constitutes a violation of his right to equal protection of the laws. *Id*. at p. 4. The court will discuss each issue in turn below.

**Miscalculation of Time Served Resulting in Assignment
to an Overly Restrictive Custody Classification**

The plaintiff's arguments regarding custody classification are foreclosed by the authority discussed above – and also by the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472 (1995). Though *Sandin* arose in the context of punishment after prison discipline, the overarching principle remains the same. Prison conditions may rise to the level of a liberty interest protected by the Due Process Clause – but only when they involve restraint which, though "not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . [that restraint] nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* 115 S. Ct. at 2300 (citations omitted).

The plaintiff has not identified an "atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. at 2301 and 2300. Instead, he has merely alleged that he has been placed in the same restrictive custody classification as many of his fellow inmates. Placement in one of a prison's ordinary custody classifications does not constitute an extreme circumstance which may warrant judicial intervention. *See McCord*, 910 F.2d at 1250 (citations omitted). As such, this allegation must be dismissed for failure to state a valid claim under 42 U.S.C. § 1983.

**Equal Protection**

Neither do the plaintiff's allegations give rise to a claim for violation of his right to equal protection of the laws. Put simply, the equal protection clause directs states to treat all similarly

situated persons alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). A state government can violate the Equal Protection Clause only by intentional discrimination. *Lavernia v. Lynaugh,* 845 F.2d 493, 496 (5th Cir.1988). "Discriminatory purpose . . . implies more than intent as violation or as awareness of consequences[.] . . . It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group[.]" *Id.* (internal quotations, citations, and footnote omitted) (emphasis in opinion).

A violation of the equal protection clause occurs only when the governmental action in question classifies or distinguishes between two or more relevant persons or groups. *Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir. 1988). To state a claim under the Equal Protection Clause, a plaintiff suing under 42 U.S.C. § 1983 must allege that a state actor intentionally discriminated against him because of his membership in a protected class. *Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999).

The plaintiff has neither alleged that he is part of a protected class nor that the defendants denied his request for placement in A-Custody because of his membership in such a class. Instead, he alleges that the defendants have erroneously failed to credit him with over eight years' incarceration toward his life sentence for deliberate design murder. A miscalculation simply does not constitute discrimination in violation of the Equal Protection Clause.

For these reasons, the plaintiff's equal protection claim in this case must be dismissed. He has not identified "two or more relevant persons or groups" which the government has classified and treated differently "and to the plaintiff's detriment." *Vera v. Tue*, 73 F.3d 604, 609-10 (5th Cir. 1996). The plaintiff's allegations regarding violation of his right to Equal Protection will therefore be dismissed with prejudice for failure to state a claim upon which relief could be granted.

**Conclusion**

For the reasons set forth above, none of the plaintiff's allegations state a valid claim for relief, and the instant case will be dismissed with prejudice for that reason. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 20th day of April, 2026.

/s/   Roy Percy
UNITED STATES MAGISTRATE JUDGE